UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
DERRICK LLOYD,                                    :
                                                  :
              Petitioner,                         :
                                                  :
       v.                                         :    **MEMORANDUM & ORDER**
                                                  :    18-CV-6979 (WFK)
ROBERT I. MORTON,                                 :
                                                  :
              Respondent.                         :
------------------------------------------------------------X
**WILLIAM F. KUNTZ, II, United States District Judge:**

Derrick Lloyd ("Petitioner"), proceeding *pro se*, brings this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his conviction for Murder in the Second Degree and Criminal Possession of a Weapon in the Third Degree.  Petition, ECF No. 1; Am. Petition ("Am. Pet."), ECF No. 21.  Petitioner argues (1) his conviction was against the weight of the evidence and the evidence against Petitioner was not legally sufficient; (2) he was deprived of due process due to the admission of a prior photo array identification and prior in-court identifications; (3) he was deprived of his right to a fair trial when the trial court permitted the prosecution to present a rebuttal witness; (4) he was deprived of his right to a fair trial due to prosecutorial misconduct; and (5) the trial court vindictively enhanced his sentence after Petitioner successfully appealed his initial conviction.  Am. Pet. at 1-2.[1]  For the reasons below, the Petition is DENIED in its entirety.

## BACKGROUND

I.     **The Shooting**

       On the evening of December 31, 1990, Rukaiyah Long-Ankrum, Karima Crosby, and

Cassandra Cannon went to Times Square to celebrate New Year's Eve.  Resp. Opp. at 1-2, ECF

No. 27.  They then went to a friend's gathering in Building 5704 in the Glenwood Houses in

Brooklyn, New York, before later leaving to sit outside on a bench in front of Building 5624.  *Id.*

at 2.  After hearing what appeared to be a party in an apartment at 5624 Farragut Road, the three

friends tried to go inside but were denied entry by a man wearing a kufi (knitted cap).  *Id.* at 2-3.

---

[1] Page citations to the Petition and Respondent Affidavit follow the pagination assigned by the Electronic Court Filing system.

The three friends then went back to the bench from which they came and were joined by several other friends, including William Smith. *Id*. at 3.

Approximately ten minutes after Smith joined the group, Petitioner exited Building 5624. At that point, Crosby recognized Petitioner as the male in the kufi who denied them entry to the party. Petitioner then approached the group, looked at Smith, and demanded to know: "where is the drunk guy who came up to the party, beefing? I want answers, and I want answers now." R. 159-60, 213, 295-97, 368, 396, 399.[2] Smith responded: "Everyone wants answers, but sometimes they can't always have them." R. 159, 214, 297, 328, 369, 380-81.

After this exchange, Smith and Petitioner started to argue. Resp. Opp. at 5. Petitioner then pulled a short black gun from his waistband and pointed it at Smith. *Id*. In response, Smith stated: "If you're going to bust me, bust me now." *Id*. Petitioner then shot Smith, killing him. *Id.*

Long-Ankrum saw Petitioner shoot Smith; Crosby heard the shot, saw a flash, and then observed Smith on the ground; and Cannon saw Petitioner fire the gun and observed a flash, as well. R. 168-69, 180-81, 224, 244-47, 297-98. After witnessing this incident, the three women subsequently ran back to Crosby's house and called the police. Resp. Opp. at 6. Long-Ankrum and Crosby then went to the precinct where they were interviewed by the police. *Id.*

Now-retired Detective Stanley Long interviewed Long-Ankrum and Crosby. *Id*. He also interviewed Lisa Lloyd, Petitioner's sister, who at that time resided on the second floor of Building 5624 in the Glenwood Houses. *Id*. at 8. Based on their testimony, Detective Long identified Petitioner as a suspect.

---

[2] Citations to "R." refer to the Trial Record under State Court Record ECF No. 27-3-4. Citations to "J.S." refer to the Jury Selection Record under State Court Record ECF No. 27-2 and citations to "Sent." refer to the Sentencing Record under State Court Record ECF No. 27-5.

Petitioner was apprehended in Alabama on August 31, 2007.  *Id*. at 9.   Petitioner's first trial, which was held in 2010, ended in a hung jury.  *See People v. Lloyd*, 185 A.D.3d 1057, 1058 (2d Dep't 2020).  Petitioner was tried a second time in 2011 and was convicted of Murder in the Second Degree and Criminal Possession of a Weapon in the Second Degree.  However, the Appellate Division, Second Department reversed that judgment and ordered a new trial.  *See People v. Lloyd*, 115 A.D.3d 766, 770 (2d Dep't 2014).

Petitioner was tried a third time in 2016.  During the 2016 trial, Long-Ankrum, Crosby, and Cannon each testified and identified Petitioner as the individual who shot Smith.  R. 140-250, 266-345, 346-417.  The prosecution also introduced these witnesses' in-court identifications from Petitioner's prior two proceedings and a photo array identification by Long-Ankrum from January 1, 1991.  R. 186-88, 249-50, 302-04, 382-83, 476-77.[3]  In response, Petitioner raised an alibi defense: his former girlfriend and the mother of his child, Karen Wynter, testified that Petitioner was with her at the time of the shooting.  R. 496-568.  Petitioner's sister, Lisa Lloyd, who hosted the party in Building 5624, also testified that Petitioner was not present at the party.  R. 608-09, 680-81.  Another attendee, Michael Massey, further testified that he did not recall seeing anyone at the New Year's Eve party wearing a kufi.  R. 591.  Petitioner also testified he was with Ms. Wynter from December 31, 1990, until the afternoon of January 1, 1991.  R. 724-84.

In rebuttal, the prosecution introduced Patricia ("Teisha") Drakes, who testified she met Petitioner at the party and that he was wearing a kufi.  Ms. Drakes also testified Petitioner's sister threatened her and told her not to speak to the police, and that she moved out of the state in fear for her safety.  R. 703-23.

---

[3]  Testimony was also introduced that Crosby was shown the same photo array but could not identify anyone because she was too drunk.  Crosby testified she was not drunk but that she was scared.  R. 338, 343, 478, 483.

The jury convicted Petitioner of Murder in the Second Degree and Criminal Possession of a Weapon in the Third Degree.  R.  957-59.  He was sentenced to concurrent terms of twenty-three years to life imprisonment on the murder count and seven-and-a-half to fifteen years of imprisonment on the weapons conviction.  Sent. 16.  The trial court later resentenced Petitioner to three-and-a-half to seven years on the weapons conviction.  Sent. 21.

## II.      Post-Conviction Activity

Petitioner appealed his conviction to the New York Supreme Court, Appellate Division, Second Department ("Appellate Division"), claiming: (1) the verdict was against the weight of the evidence and the evidence was not legally sufficient; (2) he was deprived of a fair trial when the trial court admitted a prior photographic array identification procedure and testimony of prior in-court identifications; (3) the trial court improperly admitted the rebuttal testimony of Ms. Drakes; (4) he was deprived of a fair trial due to prosecutorial misconduct in the cross-examination of defense witnesses and in the summations; and (5) the sentence was excessive and harsh.  Petitioner's Brief on Direct Appeal ("Pet. App. Br."), ECF No. 27-6.

The Appellate Division unanimously affirmed the judgment of conviction.  *See Lloyd*, 185 A.D.3d at 1058.  First, the Appellate Division held Petitioner failed to preserve his legal sufficiency claim on appeal but, in any event, the evidence was legally sufficient and the verdict was not against the weight of the evidence.  *Id*.  The Appellate Division also ruled the defense opened the door to allow the prosecution's witness to testify about her prior photographic array identification procedure, and that prior identification evidence was admissible.  *Id*.  The Appellate Division rejected Petitioner's claim that he was deprived of a fair trial because of Ms. Drake's rebuttal testimony, finding it was properly admitted as rebuttal testimony.  *Id*. at 1059. The Appellate Division also held Petitioner's sentence did not violate his due process rights and

4

was not vindictive or excessive.  *Id.*  Lastly, the Appellate Division held Petitioner's remaining claims of prosecutorial misconduct were unpreserved for appellate review and, in any event, without merit.  *Id.*

By letter dated August 3, 2020, Petitioner requested leave to appeal to the New York Court of Appeals, which that court denied on December 24, 2020.  *People v. Lloyd*, 36 N.Y.3d 974 (2020).  In his present petition before the Court, Petitioner raises the same claims he raised on direct appeal in state court, which that court denied.[4]  *See* Am. Pet.  For the reasons set forth below, this Court also denies these claims.

## LEGAL STANDARD

The Court's review of the Petition is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254.  As here, when the petitioner's claims have been rejected on the merits by a state court, the court "may grant a writ of habeas corpus only if that decision 'was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States' or if the decision 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'"  *McCormick v. Jacobson*, 16-CV-1337 (ERK) (LB), 2021 WL 5965038, at *2 (E.D.N.Y. Dec. 16, 2021) (Korman, J.) (quoting 28 U.S.C. § 2254(d)).  Judicial review under the statute's "unreasonable application" standard is "extremely deferential," *id.*, and a "state court's determination that a claim lacks merit precludes federal habeas relief so long

---

[4]  Petitioner originally filed a petition for writ of habeas corpus on December 7, 2018, claiming deprivation of due process due to a delay in filing his direct appeal.  Pet. at 5.  Respondent filed a Response to Order to Show Cause on March 22, 2019, ECF No. 4, and filed a letter on September 30, 2019, informing the Court Petitioner's direct appeal had been filed with the Appellate Division, *see* ECF No. 6, and filed subsequent letters to the court providing updates on the status of Petitioner's direct appeal.  *See* ECF Nos. 11, 14, 16, 17.  Petitioner then filed a letter seeking permission to amend his claims, ECF No. 19, which the Court granted.  ECF No. 20.  Petitioner filed an amended petition for writ of habeas corpus on March 11, 2021.  *See* Am. Pet.

as fairminded jurists could disagree on the correctness of the state court's decision." *Chrysler v. Guiney*, 806 F.3d 104, 118 (2d Cir. 2015) (citation and internal quotation marks omitted).

## DISCUSSION

### I.    Legal Sufficiency and Weight of the Evidence

Petitioner first argues he was deprived of his due process rights because the conviction was against the weight of the evidence.  He contends the witness identifications were not proved beyond a reasonable doubt and there was no physical evidence, confession, or any other evidence to support the conviction.  Am. Pet. at 1.  However, "the argument that a verdict is against the weight of the evidence states a claim under state law, which is not cognizable on habeas corpus." *McKinnon v. Superintendent*, *Great Meadow Corr. Facility*, 422 F. App'x 69, 73 (2d Cir. 2011) (citing cases in support of this proposition).

Accordingly, Petitioner's claim of legal sufficiency fails. To begin, Petitioner raised this issue for the first time in his reply brief—not his amended petition—which is an improper form of pleading.  *See Brims v. Collado*, 18-CV-6973, 2022 WL 6807545, at *9 n.5 (S.D.N.Y. Oct. 11, 2022) (Karas, J.) ("To the extent that petitioner's traverse could be read to raise new arguments that are not in his petition, they will not be considered because a traverse or reply is not the proper pleading in which to raise additional grounds for habeas relief.") (citation omitted); *Voymas v. Unger*, 10-CV-6045, 2011 WL 2670023, at *13 (W.D.N.Y. July 7, 2011) (Telesca, J.) ("[H]abeas claims raised for the first time in a reply memorandum or traverse are not properly considered.").

Petitioner also procedurally defaulted on his legal sufficiency claims.  "[A] federal court may not review federal claims that were procedurally defaulted in state court—that is, claims that the state court denied based on an adequate and independent state procedural rule." *Garner*

*v. Lee*, 908 F.3d 845, 859 (2d Cir. 2018) (quoting *Davila v. Davis*, 137 S. Ct. 2058, 2064 (2017)).  New York's "contemporaneous objection rule" under CPL § 470.05(2) is one such rule.  *See Hamilton v. Lee*, 707 F. App'x 12, 14 (2d Cir. 2017) (summary order); *Alcantara v. Bell*, 19-CV-3686 (RRM) (LB), 2022 WL 4638127, at *10 (E.D.N.Y. Sept. 30, 2022) (Mauskopf, J.).

New York's contemporaneous objection rule requires parties seeking to preserve an issue for appeal to raise the issue to the "attention of the trial court at a time and in a way that g[ives] it the opportunity to remedy the problem and thereby avert reversible error."  *Whitley v. Ercole*, 642 F.3d 278, 286 (2d Cir. 2011) (alterations omitted) (quoting *People v. Luperon*, 85 N.Y.2d 71, 78 (1995)).  General objections are not sufficient on their own; the objection must "specifically focus on the alleged error."  *Garvey v. Duncan*, 485 F.3d 709, 714 (2d Cir. 2007) (collecting cases).

Here, the Appellate Division held Petitioner's legal sufficiency claim was not preserved for appellate review under the contemporaneous objection rule.  *Lloyd*, 185 A.D.3d at 1058.  This Court agrees.[5]  At trial, defense counsel sought a trial order of dismissal after the prosecution rested its case, stating: "I would move to dismiss all of the charges against Mr. Lloyd in that the People have failed to establish a prima facie case in that they have failed to establish every element of each of the charges."  R. 487.  The defense raised another objection after the presentation of all the evidence, stating: "I move to dismiss all of the charges against Mr. Lloyd—murder, possession of the weapons charges—that the people have failed to establish each and every element of the crimes sufficient to be presented to the jury."  R. 807.  Both

---

[5] The Appellate Court found Petitioner's legal sufficiency claims were meritless in the alternative, but that does not change the Court's conclusion.  A state procedural rule is considered independent when the state court relies on the state procedural bar as an independent basis for its disposition and clearly and expressly states the judgment rests on the state procedural bar.  *See Garner v. Lee*, 908 F.3d 845, 859 (2d Cir. 2018).  The Appellate Court's decision, even though stated in the alternative, meets this standard: it clearly and expressly rests its conclusion on the "contemporaneous objection rule."  *See Harris v. Reed*, 489 U.S. 255, 264 n.10 (1989) ("A state court need not fear reaching the merits of a federal claim in an alternative holding.")

objections were general; neither alleged specific errors.  Therefore, the Appellate Court held neither satisfied the contemporaneous objection rule.

In doing so, the Appellate Court declined to apply the contemporaneous objection rule in an "exorbitant" manner, and no other exception to the rule otherwise applies.  A state preservation rule may support the judgment and bar federal review if it is "firmly established and regularly followed" in the state.  *Lee v. Kemna*, 534 U.S. 362, 376 (2002).  The Second Circuit has held New York's contemporaneous objection rule is firmly established and regularly followed in New York courts.  *Garcia v. Lewis*, 188 F.3d 71, 78–79 (2d Cir. 1999).  However, "even firmly established and regularly followed state rules will not foreclose review of a federal claim if the application of the rule in a particular case is 'exorbitant.'"  *Garvey v. Duncan*, 485 F.3d 709, 713–14 (2d Cir. 2007) (quoting *Lee*, 534 U.S. at 376).  This exception requires courts to consider "(1) whether the alleged procedural violation was actually relied on in the trial court, and whether perfect compliance with the state rule would have changed the trial court's decision; (2) whether state caselaw indicated that compliance with the rule was demanded in the specific circumstances presented; and (3) whether petitioner had 'substantially complied' with the rule . . . ."  *Cotto v. Herbert*, 331 F.3d 217, 240 (2d Cir. 2003).

The exception does not apply here.  First, the trial court could not have "relied on" Petitioner's violation of the contemporaneous objection rule because "such a violation, by definition, cannot occur until a party attempts to raise an unpreserved argument on appeal." *Huger v. Bell*, 20-CV-1196, 2022 WL 59681, at *8 (E.D.N.Y. Jan. 5, 2022) (Matsumoto, J.). Second, New York courts have long relied on the contemporaneous objection rule to dismiss legal sufficiency claims.  *See, e.g.*, *Whitley*, 642 F.3d at 286; *Sims v. Artus*, 14-CV-4734, 2016 WL 6462405, at *11 (S.D.N.Y. July 7, 2016) (Freeman, Mag. J.), *report and recommendation*

*adopted*, 14-CV-4734 (VEC), 2016 WL 6426397 (S.D.N.Y. Oct. 28, 2016) (Caproni, J.); *Duren*

*v. Lamanna*, 18-CV-7218 (JS), 2020 WL 509179, at *24 (E.D.N.Y. Jan. 30, 2020) (Seybert, J.).

Third, based on the trial record, though the defense raised the legal sufficiency claim twice, there

was no attempt to point to specific deficiencies until the claim was raised on direct appeal.

Because the contemporaneous objection rule requires objections to "specifically focus on the

alleged error," Defendant did not substantially comply with the rule as the third prong of the

exception requires. *See Huger*, 2022 WL 59681, at *8.  Accordingly, the Court finds the state

appellate court's application of the preservation rule was not "exorbitant," and therefore federal

habeas review of these claims is barred.

         This Court also no other reason to depart from this conclusion. While it is possible for a

procedural bar to be overcome if a petitioner "can demonstrate cause for the [procedural] default

and actual prejudice as a result of the alleged violation of federal law," or if he can "demonstrate

that failure to consider the claims will result in a fundamental miscarriage of justice," neither has

occurred here. *See Coleman v. Thompson*, 501 U.S. 722, 749-50 (1991).  Indeed, Petitioner

declined to raise either argument.  Therefore, his legal sufficiency claim is procedurally barred

and thus denied.

## II. Admission of Prior Identifications

         Petitioner argues he was denied due process because the trial court admitted both a prior

photographic array identification and the prior identifications of three prosecution witnesses

from the two previous court proceedings.  Am. Pet. at 1.

         At trial, Rukaiyah Long-Ankrum, Karima Crosby, and Cassandra Cannon all testified to

what they had witnessed in the early morning of January 1, 1991, outside of Building 5624 at the

Glenwood Houses.  After the defense cross examined Long-Ankrum, the prosecution sought to

introduce the photographic array, arguing the defense had opened the door to this evidence by creating the false impression that Long-Ankrum was only recently able to identify Petitioner.  R. 33-34, 228-31.  The prosecution pointed to defense counsel's opening statement in which he remarked the prosecution's witnesses had "made previous statements regarding their trouble to make an identification" and stated the jury needed to evaluate what the witnesses said in 1991, not what they said at prior proceedings.  R. 32-33.  Also offered in support of the admission of the prosecution's evidence was the fact the defense had cross-examined Long-Ankrum about her prior in-court identifications and about Petitioner's presence at the defense table, sitting beside the same attorney who was present at the previous proceedings, to imply that Long-Ankrum had been influenced by the prior in-court identifications.  R. 228-31.

The trial court agreed with the prosecution. The court held the defense had opened the door and permitted the prosecution to introduce evidence about Long-Ankrum's photographic array identification of Petitioner in 1991.  R. 232-37, 249-50, 476-77.  Additionally, each of the witnesses identified Petitioner in court and testified they had identified him in the 2010 and 2011 court proceedings.  R. 186-88, 302-04, 382-83.  On appeal, the Appellate Division held the introduction of the photographic array was proper because the defense had opened the door and the admission of the prior in-court identifications was permissible under the former CPL § 60.30.[6]  *Lloyd*, 185 A.D.3d at 1058.

Petitioner's claims as to the prior identifications arise under state evidentiary law.  State court evidentiary rulings do not raise constitutional issues cognizable under federal habeas review.  *McKinnon*, 422 F. App'x at 72-73; *Estelle v. McGuire,* 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law

---

[6] CPL § 60.30 was amended effective July 1, 2017, after Petitioner's trial.

questions."). Claiming deprivation of due process does not automatically convert a claim of alleged state law error into a constitutional violation. *Gopaul v. Racette*, 15-CV-1781, 2021 WL 5163211, at *3 (E.D.N.Y. Nov. 5, 2021) (Garaufis, J.) (citing *DiGuglielmo v. Smith*, 366 F.3d 130, 136 (2d Cir. 2004)).

When a petitioner seeks habeas relief based on an evidentiary ruling, the habeas court should first determine whether the ruling was erroneous under New York state law. *Hawkins v. Costello*, 460 F.3d 238, 244 (2d Cir. 2006); *Wade v. Mantello,* 333 F.3d 51, 59 n.7 (2d Cir. 2003). Then, the court must assess whether the challenged evidentiary ruling affected the fundamental fairness of the proceedings. *McKinnon*, 422 F. App'x at 73; *see also Collins v. Scully*, 755 F.2d 16, 18 (2d Cir. 1985). If the evidentiary ruling is determined to be erroneous, a petitioner must show "the erroneously admitted evidence, viewed objectively in light of the entire record before the jury, was sufficiently material to provide the basis for conviction or to remove a reasonable doubt that would have existed on the record without it." *Collins*, 755 F.2d at 19. However, if the evidentiary ruling was correct pursuant to a state evidentiary rule, the habeas court's inquiry is limited to whether that state rule is arbitrary or disproportionate to the purpose it is designed to serve. *Hawkins*, 460 F.3d at 244 (citing *United States v. Scheffer,* 523 U.S. 303, 308 (1998) (A state evidentiary rule is "unconstitutionally arbitrary or disproportionate only where it has infringed upon a weighty interest of the accused.")). Further, the Second Circuit has explained that "even before AEDPA required a more deferential standard of review, the Supreme Court had a 'traditional reluctance to impose constitutional constraints on ordinary evidentiary rulings by state trial courts.'" *Hawkins*, 460 F.3d at 244 (citing *Crane v. Kentucky*, 476 U.S. 683, 689 (1986)).

Petitioner argues the trial court erred in admitting the prior in-court identifications because they were used to bolster the instant in-court identifications and because the court admitted two prior identifications.  Pet. Traverse in Response at 25.  He is mistaken.  Both the 2010 and the 2011 in-court identifications adhere to the parameters of the former CPL § 60.30.  Under New York law, "prior identification evidence is admissible on the People's case-in chief, notwithstanding its bolstering effect on the witness's in-court testimony." *McGraw v. Lee*,  09-CIV-8541 (DLC), 2011 WL 2988567, at *4 (S.D.N.Y. July 22, 2011) (Cote, J.) (citing *People v. White,* 73 N.Y.2d 468, 473 (2d Dep't 1989)); *see also People v. Rosario*, 186 A.D.2d 598, 598 (2d Dep't 1992) ("[U]nder CPL 60.30, a witness's testimony as to identifications he or she made at prior court proceedings are admissible notwithstanding their bolstering effect on the witness's testimony.").  Furthermore, Petitioner's claim that a party may only admit one prior identification is without merit.  Each of the two prior identifications would separately meet the criteria set forth in the former CPL § 60.30.  Each was separately admissible, and thus there was no error in the ruling.  Finally, the evidentiary rule is not arbitrary or disproportionate to the purpose it serves and it does not otherwise infringe on a "weighty interest."

The admission of the prior photographic identification was also not in error.  Such evidence is admissible if the defense opens the door to this topic during cross examination.  *See Wilson v. Mazzuca*, 570 F.3d 490, 503 (2d Cir. 2009); *People v. Hamilton,* 33 A.D.3d 937, 937-38 (2d Dep't 2006) ("[W]hile [a] witness is generally not permitted to testify to [an] extrajudicial identification of [a] photograph of [the] defendant, such testimony is appropriate when [the] defendant opens [the] door to this type of inquiry during cross-examination of [the] witness.").  Petitioner argues the court ruled the defense would open the door to admission of the photographic array if the defense brought up Long-Ankrum viewing a photo of Petitioner prior to

the first trial.  While this is true, this was just one of many examples of how the defense could open the door to this evidence.  The court further remarked: "it really depends on how it is brought out by defense counsel."  R. 4.  While the court noted one way in which the defense could open the door, the court's statement does not preclude other methods of opening the door to admit the photographic array.  Therefore, in light of the defense's opening statement and its cross examination of Long-Ankrum, this Court finds the trial court did not err: the defense opened the door for the admission of the photographic array identification.  The trial court's ruling to this effect was not arbitrary or disproportionate, and it did not infringe on Petitioner's weighty interests or on the fundamental fairness of the trial.  Accordingly, Petitioner's claims are denied for lack of merit.

### III. Rebuttal Witness

Petitioner next contends he was denied his rights to a fair trial and to confrontation when the trial court allowed Ms. Drakes' rebuttal testimony as to Petitioner's presence at Lisa Lloyd's party and Lisa Lloyd's threats against Ms. Drakes.  This claim fails because it is partially unexhausted, partially procedurally barred by an independent and adequate state ground, and partially without merit.

#### A. Right to Confrontation

Petitioner argues he was denied his right to confrontation when the trial court permitted Ms. Drakes' rebuttal testimony regarding out-of-court statements.  Am. Pet. at 1.  However, Petitioner did not raise this claim in his direct appeal and therefore failed to exhaust it.  *See Baldwin v. Reese*, 541 U.S. 27, 29 (2004); *Ramirez v. Attorney Gen. of the State of N.Y.*, 280 F.3d 87, 94 (2d Cir. 2001) (citations omitted).  Further, Petitioner is no longer able to exhaust this claim in state court because he is allowed only one direct appeal.  *See* CPL § 450.10(1); N.Y.

13

Court R. § 500.10(a); *St. Helen v. Senkowski*, 374 F.3d 181, 182–83 (2d Cir. 2004); *Aparicio v. Artuz*, 269 F.3d 78, 91 (2d Cir. 2001).  This combination of factors means that Petitioner's claim on habeas review is barred: A claim "is procedurally barred if a petitioner did not raise it in state court, and the procedural mechanism for raising it under state law is no longer available."  *Garcia v. Franchi*, No. 19-CV-5547 (BMC), 2020 WL 353099, at *2 (E.D.N.Y. Jan. 21, 2020) (Cogan, J.), *aff'd sub nom. Garcia v. Suffolk Cnty. Dist. Attorney's Off.,* 840 F. App'x 629 (2d Cir. 2021).  *See also Aparicio*, 269 F.3d at 91; *Tyrell v. Lee*, 11-CIV-3348 (CS) (LMS), 2015 WL 9666334, at *8 (S.D.N.Y. Dec. 14, 2015) (Smith, Mag. J.).

Petitioner has not raised any argument of cause resulting in prejudice or miscarriage of justice to overcome this procedural bar.  Therefore, the confrontation claim is denied.  *See Coleman*, 501 U.S. at 750.

## B. Due Process Claims

On direct appeal, Petitioner did raise the claim his due process right to a fair trial was denied when Ms. Drakes was permitted to testify as a rebuttal witness as to (a) Lisa Lloyd's threats toward her and (b) meeting Lisa Lloyd's brother at her party.  Therefore, these claims have been properly exhausted.  But Petitioner's claims are nonetheless procedurally barred by independent and adequate state grounds and are otherwise without merit.

(i)    Lisa Lloyd's threats

Petitioner argues he was denied due process when Ms. Drakes testified that Lisa Lloyd threatened her.  He claims the testimony was improperly raised as the underlying substance—the threats themselves—were outside the scope of cross-examination.  Am. Pet. at 2; Pet. Traverse at 29-35.  The Appellate Division deemed this claim unpreserved for appellate review.  *Lloyd*, 185 A.D.3d at 1059.

14

This Court agrees.  Here, Petitioner's claims are barred by the contemporaneous objection rule because his counsel failed to raise any specific objection regarding the scope of cross-examination.  R. 682-86.  General objections are not enough.  To properly preserve an issue for appellate review, the objecting party must make a specific protest at the time of the claimed error.  *Murray v. Greene*, No. 06-CIV-3677 (AJP), 2006 WL 3751294, at \*16 (S.D.N.Y. Dec. 21, 2006) (Peck, Mag. J.) (finding that where the defense objected several times to the prosecutor's summation, but only said "objection" and did not specify the grounds for objecting, petitioner's claim was procedurally barred); *People v. Everson*, 100 N.Y.2d 609, 610 (2003) ("A party's failure to specify the basis for its general objection renders its argument unpreserved for this Court's review."); *People v. Vidal*, 26 N.Y.2d 249, 254 (1970) ("A general objection, in the usual course, is to no avail when overruled if not followed by a specific objection directing the court, and the adversary, to the particular infirmity of the evidence.").  Moreover, the Appellate Division's reliance on the contemporaneous objection rule was independent of any federal question and the rule is firmly established and regularly followed.  *See Hamilton*, 707 F. App'x at 14.  Further, the rule was not exorbitantly applied.  *See Lee*, 534 U.S. at 376; *Cotto*, 331 F.3d at 240.  As such, because Petitioner's claims are barred under the contemporaneous objection rule, they are not preserved for this Court's review.

Petitioner has not presented any argument of cause resulting in prejudice or miscarriage of justice to overcome the procedural bar for his claims regarding the scope of cross-examination.  Therefore, his claims are denied.  *See Coleman*, 501 U.S. at 750.

(ii)    Meeting Lisa Lloyd's brother at the party

Petitioner also claims his due process rights to a fair trial were denied when Ms. Drakes testified that Lisa Lloyd introduced Ms. Drakes to her brother at the New Year's Eve party.  The

Appellate Division held introduction of that testimony was properly admitted rebutting Petitioner's claims that he was not at the party. *Lloyd*, 185 A.D.3d at 1059.

The function of rebuttal testimony is to "explain, repel, counteract or disprove the evidence of the adverse party." *Atkins v. Chappius*, 1:13-CV-00956 (CJS), 2020 WL 6264452, at *16 (W.D.N.Y. Oct. 23, 2020) (Siragusa, J.) (citing *United States v. Chrzanowski*, 502 F.2d 573, 576 (3d Cir. 1974)). The decision to allow Ms. Drakes to testify that she met Ms. Lloyd's brother at the party was a state evidentiary ruling, which is not cognizable under federal habeas review. *McKinnon*, 422 F. App'x at 73. As such, Petitioner's claim is not properly reviewable by this Court unless the challenged state evidentiary ruling affected the fundamental fairness of those proceedings. *Id.* To make this assessment, this Court first must look to see if an error was made. *Hawkins*, 460 F.3d at 244. If there was an error, the Court then must determine whether that error unconstitutionally undermined the fundamental fairness of the trial. *McKinnon*, 422 F. App'x at 73. On the other hand, if there was no error, then the Court must analyze whether the ruling was arbitrary or disproportionate to the weighty interests of the petitioner. *Hawkins*, 460 F.3d at 244.

Here, the trial court did not err in permitting Ms. Drakes to testify about meeting Ms. Lloyd's brother at the party. Under New York law, a "party has a right to impeach or discredit the testimony of an opponent, and such evidence is always competent. He may contradict the testimony of a witness as to any matters upon which he has been called to give evidence in chief, provided it is not collateral." *Velazquez v. Fischer*, 524 F. Supp. 2d 443, 451 (S.D.N.Y. 2007) (Chin, J.) (quoting *People v. Harris*, 57 N.Y.2d 335, 345 (1982)). Challenging an alibi witness on the validity of their defense is a material issue and extrinsic evidence is allowed to rebut such testimony. *See People v. Knight*, 80 N.Y.2d 845, 847 (1992); *People v. Cade*, 73 N.Y.2d 904,

905 (1989).  The prosecution introduced Ms. Drakes' testimony as to meeting Ms. Lloyd's brother at the party to rebut Ms. Lloyd's and Petitioner's testimony that he was not at the party. This is not a collateral issue but one that strikes at the very center of what the jury must determine: whether Petitioner was present at the time of the shooting.  *See, e.g.*, *Velazquez*, 524 F. Supp. 2d at 451 ("The testimony of the detectives went to the heart of the 'very issue the jury had to decide,' *i.e.,* whether petitioner was present at the robbery-homicide.").  There was no error in admitting Ms. Drakes' testimony and the admission was not arbitrary or disproportionate to the weighty interest of Petitioner as the defense raised the alibi and introduced the testimony. As there was no error, there was no constitutional violation of Petitioner's due process rights. Accordingly, Petitioner's claims as to the rebuttal witness are denied.

## IV. Prosecutorial Misconduct

Petitioner also argues he was denied his due process right to a fair trial because of prosecutorial misconduct.  Specifically, he argues the prosecutor's comments on summation and the prosecutor's cross examination of Lisa Lloyd about her conversations with Petitioner regarding the jury and judge were improper.  Am. Pet. at 2.  The Appellate Division correctly found both claims were unpreserved for appeal, and in any event, meritless or not warranting reversal.  *Lloyd*, 185 A.D.3d at 1059.

### A.  Summation

Petitioner claims the prosecutor denigrated the defense, vouched for the credibility of witnesses, bolstered the identification testimony of said witnesses, and emphasized the out-of-court statements to which Ms. Drakes testified.  Am. Pet. at 2.  Petitioner's claims as to the prosecutor's summation are procedurally barred by independent and adequate state grounds. While the defense objected approximately nineteen times during the prosecutor's summation, he

only once pointed to a specific error, and he did not request a curative instruction or call for a

mistrial based on the prosecutor's summation.  R. 852-914; *see People v. Philbert*, 60 A.D.3d

698, 699 (2d Dep't 2009) ("The defendant's contention that certain comments made by the

prosecutor . . . constituted reversible error is unpreserved for appellate review since the

defendant made only general objections, did not request curative instructions when the

objections were sustained, and did not timely move for a mistrial on the specific grounds he now

asserts on appeal."); *Garvey,* 485 F.3d at 714 ("A general objection is not sufficient to preserve

an issue since such would not alert the court to defendant's position.").  As discussed above, the

contemporaneous objection rule is considered an independent and adequate state ground.

*Hamilton*, 707 F. App'x at 14.  Therefore, Petitioner's claims regarding the prosecution's

summation are procedurally barred.

Further, the trial court's application of the procedural rule here was not exorbitant, and

thus no exception that would warrant review of these claims on appeal applies.  Applying the

*Lee/Cotto* factors to this claim, as this Court has done with Petitioner's other claims, the outcome

remains the same.  The trial court could not have relied on the procedural violation because there

was no violation of the contemporaneous objection rule until a direct appeal was filed.  *See*

*Huger*, 2022 WL 59681, at *8.  The rule is firmly established and routinely followed with

respect to objections to prosecutorial comments on summation, and Petitioner's trial counsel did

not substantially comply with the rule because the defense only generally objected to the

statements it found inappropriate or prejudicial.  Accordingly, the contemporaneous objection

rule is an independent and adequate state ground.  Therefore, Petitioner's claim is procedurally

barred.  *See Lee*, 534 U.S. at 376; *Cotto*, 331 F.3d at 240.  Moreover, Petitioner has not presented

any argument of cause resulting in prejudice or a miscarriage of justice to overcome the

procedural bar.  Petitioner's due process claim regarding the prosecution's summation is therefore denied.  *See Coleman*, 501 U.S. at 750.

### B.  Prosecutor's Cross Examination of Lisa Lloyd

As part of the defense's case, Petitioner's sister Lisa Lloyd testified that Petitioner was not at the New Year's Eve party she hosted at her apartment on the night of December 31, 1990 and the morning of January 1, 1991.  R. at 612-13.  On cross-examination, the prosecutor extensively questioned Ms. Lloyd about the events that occurred during the party, her relationship to her family and specifically Petitioner, when she met Petitioner's girlfriend, and her conversation with Ms. Drakes.  R. 613-695.  During cross-examination, the prosecutor asked Ms. Lloyd if she was the "go-to" person for Petitioner, providing him with support, listening to his problems, and speaking frequently with Petitioner and talking to him about his case.  R. 634-36.  The prosecutor asked Ms. Lloyd if she spoke to Petitioner about what his attorney was doing.  The prosecutor also asked Ms. Lloyd if Petitioner spoke to her about jury selection, specifically about whether there were white women on the jury, the racial makeup of the jury, and how Petitioner felt the judge was biased against him and did not like that the judge pointed out the victim was Black.  R. 635-46.  Petitioner argued this line of questioning denied him his due process right to a fair trial by "unnecessarily and inappropriately inject[ing] race into the trial."  Am. Pet. at 2; Pet Traverse at 39.

The Appellate Division held this claim was unpreserved for appeal.  *Lloyd*, 185 A.D.3d at 1059.  This Court disagrees.  The record indicates the defense made multiple general objections during this line of questioning, and the trial court sustained some of those objections.  These general objections alone may not have been enough to preserve Petitioner's claim for appeal.  However, during Ms. Lloyd's testimony, the defense called for a mistrial based on the

prosecution's questions about whether Petitioner was satisfied with his attorney. R. 666-67. The defense therefore preserved this particular claim for appeal.

Under New York law, to preserve a claim regarding allegedly improper prosecutorial remarks, the defense must not only raise specific objections, but also seek further relief such as a mistrial or curative instructions if the court sustains those objections. *Reardon v. Richardson,* 956 F.2d 391, 391 (2d Cir. 1992); *Simpson v. Portuondo*, 01-CIV-1379 (BSJ) (AJP), 2001 WL 830946, at *11 (S.D.N.Y. July 12, 2001) (Peck, Mag. J.). *See also People v. Weston*, 56 N.Y.2d 844, 846 (1982) ("[I]t was necessary that [defendant] move for a mistrial on [the] specific ground [that he was prejudiced by the prosecution's references to a knife] in order to preserve the issue for appellate review . . ."); *People v. Medina,* 53 N.Y.2d 951, 953 (1981) ("The Trial Judge ultimately sustained defense counsel's objection to the District Attorney's comments . . . . Defense counsel did not request any curative instruction or move for a mistrial on the basis of the remarks . . . Hence, no error of law was preserved for appellate review.").

While the Appellate Division relied on the contemporaneous objection rule as an independent basis for its disposition of Petitioner's claim about the prosecution's line of questioning, the court's application of the rule was exorbitant under the *Lee/Cotto* factors. *Lee*, 534 U.S. at 376; *Cotto*, 331 F.3d at 240. Here, there was no error for the court to rely on, so this factor favors Petitioner. *See Ojar v. Greene*, 07-CV-3674 (JG), 2008 WL 428014, at *8–9 (E.D.N.Y. Feb. 15, 2008) (Gleeson, J.) ("Here, the trial court did not rely on any error made by Ojar, because there was none"); *McLeod v. Graham*, 10-CIV-3778 (BMC), 2010 WL 5125317, at *5 (E.D.N.Y. Dec. 9, 2010) (Cogan, J.) ("The trial court did not, nor could it have, relied on petitioner's procedural error in denying the claim because petitioner committed no error.").

The second factor asks whether state caselaw indicates that compliance with the rule is demanded in the specific circumstance presented. As noted above, to preserve an issue for appeal, one must provide specific objections and follow up seeking further relief. *Reardon,* 956 F.2d at 391. Petitioner argued when he moved for a mistrial that the prosecution's line of questioning was "highly prejudicial" and "violate[d] Petitioner's constitutional and due process rights for a fair trial." R. 667. The purpose of the contemporaneous objection rule is "to fairly apprise the court and the opposing party of the nature and scope of the matter contested." *Whitley*, 642 F.3d at 290–91 (citing *Garcia,* 188 F.3d at 78). The rule "ensures that the parties draw the trial court's attention to a potential error while there is an opportunity to address said error, and to prevent parties from 'sandbagging' opposing party and the trial court on appeal." *Whitley*, 642 F.3d at 288; *Wright v. Duncan*, 500 F. App'x 36, 38 (2d Cir. 2012). Here, the defense's motion for a mistrial combined with its contemporaneous objections fulfilled the purpose of the rule.

The Respondent argued on direct appeal that Petitioner did not raise a "race" issue, and therefore this claim is not preserved. Resp. App. Br., ECF No. 27-7 at 76. However, this point is covered by the defense's argument that the questioning was prejudicial to Petitioner, since the prosecutor asked Ms. Lloyd about white women on the jury and whether Petitioner was upset the Judge pointed out the victim was Black. R. 634-46. Thus, the second factor favors Petitioner as well.

Last, the third and most important factor also supports Petitioner. *Lee,* 534 U.S. at 382; *Whitley*, 642 F.3d at 290–91. Petitioner substantially complied with the requirements of the contemporaneous objection rule: the defense objected to the prosecutor's line of questioning, and, when many of those objections were sustained, the defense called for a mistrial based upon

that line of questioning.  Petitioner objected at the time and then pointed to the specific error and requested specific relief.  *See Ojar*, 2008 WL 428014, at *8–9 ("Ojar made a specific objection towards the prosecutor's conduct, explained why that conduct prejudiced him, and requested a mistrial."); *Martin v. Perez*, 13-CIV-2413 (VB) (PED), 2016 WL 5815841, at *7 (S.D.N.Y. Feb. 18, 2016) (Davison, Mag. J.) ("It is clear . . . that the motion to dismiss was specifically directed at the alleged error.  It is unclear what more trial counsel could reasonably have done"); *Battee v. Phillips*, 104-CV-04334 (ENV), 2010 WL 2026443, at *9 (E.D.N.Y. May 20, 2010) (Vitaliano, J.) ("[T]he record demonstrates that petitioner in fact did comply with the procedural rules that the Second Department cited – the trial transcript reflects that defense counsel made a specific and timely request to the trial court").

With all factors favoring Petitioner, Petitioner's claims as to the prosecutor's cross-examination of Ms. Lloyd are not procedurally barred from federal review.  *See, e.g.*, *McLeod*, 2010 WL 5125317, at *5; *Rios v. Lempke*, 11-CV-00205F, 2014 WL 2168057, at *17 (W.D.N.Y. May 22, 2014) (Foschio, Mag. J.).  Nevertheless, Petitioner's claim fails for the following reasons.

The Appellate Division held Petitioner's claim was "unpreserved for appellate review, or in any event meritless or not warrant[ing] reversal."  *Lloyd*, 185 A.D.3d at 1059.  The court's conclusion that Petitioner's claim was "meritless or not warrant[ing] reversal" constitutes an "alternative holding" and is entitled to deference under 28. U.S.C. § 2254(d).  *Cooper v. Griffin*, 16-CV-0629 (VEC) (BCM), 2019 WL 1026303, at *9 (S.D.N.Y. Feb. 11, 2019) (Moses, Mag. J.) (citing *Zarvela v. Artuz*, 364 F.3d 415, 417 (2d Cir. 2004)).  Accordingly, the Court must review Petitioner's claim under § 2254(d) and assess whether the Appellate Division's

22

determination was contrary to or an unreasonable application of federal law as determined by the Supreme Court or if the decision was based on an unreasonable determination of the facts.

On habeas review, the relevant standard of review for a claim of prosecutorial misconduct is "a narrow one of due process, and not the broad exercise of supervisory power." *Jackson v. Conway*, 763 F.3d 115, 146 (2d Cir. 2014) (quoting *Darden v. Wainwright*, 477 U.S. 168, 180 (1986)).  Habeas relief is warranted only if a prosecutor's remarks "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Id.* (quoting *Darden*, 477 U.S. at 180).  *See also Parker v. Matthews*, 567 U.S. 37, 45 (2012).  The Court must consider the entire record when making this determination.  While a prosecutor may have made inappropriate and erroneous comments, those remarks may not have undermined a trial's fundamental fairness.  *Jackson*, 763 F.3d at 145-46.

Prosecutors generally have broad latitude when questioning hostile or recalcitrant witnesses, but that latitude is not limitless.  *Ogletree v. Graham*, 559 F. Supp. 2d 250, 260 (N.D.N.Y. 2008) (Bianchini, Mag. J.) (quoting *United States v. Zackson*, 12 F.3d 1178, 1184 (2d Cir. 1993)).  Here, the prosecutor pushed the boundaries of those limits when she questioned Ms. Lloyd about conversations she had with Petitioner about the race of the jurors and Petitioner's feelings about the judge.  This Court finds that line of questioning aberrant, bizarre, and distressing.[7]

---

[7] This Court also notes the prosecutor argued that the line of questioning went to Ms. Lloyd's credibility, but the prosecutor based these questions on phone calls between Petitioner and Ms. Lloyd and sought to use those phone calls in the questioning. "Well, in the telephone conversation from March 14, of 2016, it's fair to say that the defendant was going into some detail about what happened in Court that day with you, correct?" R. 644-45. The prosecutor even went so far as to introduce Ms. Lloyd's telephone number to the jury.  R. 643-44.  New York state law does not permit the introduction of extrinsic evidence on a collateral matter for the purposes of impeaching credibility.  *People v. Deverow*, 38 N.Y.3d 157, 164–65 (2022).  Where evidence is probative of the witness's ability to recall the event in question, it is not considered collateral.  *Id.*  Here, however, the prosecutor specifically argued the line of questioning was meant to show Ms. Lloyd was not being truthful about speaking to Petitioner, which was unrelated to Ms. Lloyd's ability to recall the events of January 1, 1991.  R. 668.

However, this Court must also consider "the severity of the misconduct; the measures adopted to cure the misconduct; and the certainty of conviction absent the improper statements." *Floyd v. Meachum,* 907 F.2d 347, 355 (2d Cir. 1990); *United States v. Elias,* 285 F.3d 183, 190 (2d Cir. 2002).  In examining this line of questioning in the context of the entire trial record, which contains overwhelming evidence from three eyewitnesses and indicates that many of the prosecutor's questions were sustained, this Court finds the prosecutor's questions did not undermine the fundamental fairness of the trial or deny Petitioner his due process rights.  *See Ogletree*, 559 F. Supp. 2d at 260; *Ojar*, 2008 WL 428014, at *12.  In sum, the Appellate Division's merit determination was not contrary to, or an unreasonable application of, federal law as determined by the Supreme Court.  Petitioner's claim is accordingly denied.

## V.  Vindictive Sentence

Petitioner's final claim argues the trial court vindictively enhanced his sentence following his retrial.  Am. Pet. at 2.  The Appellate Division held the sentence was not the product of vindictiveness nor violative of Petitioner's right to due process.  *Lloyd*, 185 A.D.3d at 1059. Petitioner successfully appealed his conviction from his second trial in which he was sentenced by Judge Dwyer to a concurrent term of eighteen years to life on the Murder in the Second Degree count, six to twelve years on the Criminal Possession of a Weapon in the Second Degree count, and three and one-half to seven years on the Criminal Possession of a Weapon in the Third Degree count.  *Lloyd*, 115 A.D.3d 766 (2d Dep't 2014).  Upon conviction at his third trial, Petitioner was sentenced by Judge Firetog to a concurrent term of twenty-three years to life on the Murder in the Third Degree count and to three and one-half to seven years on the Criminal Possession of a Weapon in the Third Degree. Sent. 16, 21.

Petitioner argues that because his sentence was higher after his third trial, which followed his successful appeal of his conviction, there exists a presumption of vindictiveness which is not overcome by the trial court's stated reasons.  Pet. App. Br.  86-89 (citing *North Carolina v. Pearce*, 395 U.S. 711, 725-26 (1969)).  In *Pearce,* the Supreme Court held that when a judge imposes a more severe sentence after a new trial, he must place his reasoning on the record.  The reasoning must be based upon objective identifiable conduct by the defendant that occurred after the original sentence.  395 U.S. at 725-26.

However, the Supreme Court went on to narrow the scope of the *Pearce* doctrine.  The Supreme Court subsequently held a presumption of vindictiveness does not apply when a different judge imposes the higher sentence upon retrial.  *See Texas v. McCullough*, 475 U.S. 134, 140 (1985); *see also United States v. Atehortva*, 69 F.3d 679, 683–84 (2d Cir. 1995) (citing *United States v. Coke*, 404 F.2d 836, 845 (2d Cir. 1968) (en banc)*; United States v. Perez*, 904 F.2d 142, 146 (2d Cir. 1990).  Here, the presumption of vindictiveness does not apply as Petitioner was sentenced by a different judge, so the burden remains on Petitioner to show actual vindictiveness upon resentence.  *Alabama v. Smith*, 490 U.S. 794, 799 (1989).  The trial court stated that its higher sentence was based upon Petitioner's testimony in which he perjured himself and showed no remorse, and that of Ms. Drake wherein she testified about the threats against her.  Neither of these categories of testimony were available to the first sentencing judge, as neither Petitioner nor Ms. Drake testified at the second trial.  Sent. 16.  This reasoning would affirmatively rebut any presumption of vindictiveness. *See Pearce*, 395 U.S. at 726.   Moreover, Petitioner makes no sound argument that the trial court's reasoning is based in vindictiveness. Petitioner cannot even demonstrate that there is a reasonable likelihood that his higher sentence was the product of vindictiveness.  *United States v. Singletary*, 458 F.3d 72, 76 (2d Cir. 2006).

The trial court's record was clear; a different judge resentenced Petitioner; and there existed specific reasons, not present at the second trial, for why Petitioner's sentence increased. Thus, the Appellate Division's determination was not contrary to, or an unreasonable application of, federal law as determined by the Supreme Court. Accordingly, Petitioner's claim is denied.

## CONCLUSION

For the foregoing reasons, the Petition is DENIED in its entirety. A certificate of appealability shall not issue. *See* 28 U.S.C. § 2253. The Clerk of the Court is respectfully directed to serve notice of entry of this Order on all parties and to close the case.

**SO ORDERED.**

s/ WFK

HON. WILLIAM F. KUNTZ, II
UNITED STATES DISTRICT JUDGE

Dated: February 14, 2023
        Brooklyn, New York